UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY VERNON,

    Plaintiff,

v.

GO VENTURES, LLC, ET AL.,

    Defendants.
_____/

Case No. 16-cv-13818

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [9]**

**I. INTRODUCTION**

Plaintiff Kimberly Vernon initiated this action, on behalf of herself and other similarly situated employees, against Defendants GO Ventures, LLC, GO Ventures-Holly, LLC, Tangaroo Creek, Drake Enterprises, LLC, Drake Enterprises-Holly, LLC, Greg Taylor, and Wynn Taylor (collectively "Defendants") on October 26, 2016. Dkt. No. 1. Plaintiff alleges that Defendants violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Michigan Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.411, *et seq.*, the Michigan Whistleblower Protection Act, MICH. COMP. LAWS § 15.361, *et seq.*, the Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101, *et seq.*, and Michigan public policy. *Id.* Plaintiff's complaint alleges that Defendants failed to

pay her and other similarly situated employees of Defendants' camping and lodging facilities the appropriate minimum wages and overtime pay, and that Defendants retaliated against Plaintiff after she notified them about the violations. *Id.*

This matter comes before the Court on Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 9. Upon review of the pleadings, the Court finds that oral argument will not aid in the disposition of this matter. Accordingly, the Court will decide the matter on the pleadings. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated more fully below, this Court will grant in part and deny in part Defendants' motion [9].

## II. BACKGROUND

Defendants own and operate numerous campgrounds and lodging facilities in states including Michigan, Tennessee, New York, Alabama, and Missouri. Dkt. No. 1, p. 5 (Pg. ID 5). Plaintiff asserts that these businesses operate more than seven months of the year. *Id.* at 6.

Plaintiff began working for Defendants' campground in Holly, Michigan in or about April 2013. *Id.* In her initial position as Activities Director, Plaintiff's starting pay was $7.25 per hour. *Id.* Plaintiff's hours exceeded 40 hours per week

and would include "off the clock" work that Defendants did not include on her time records. *Id*.

Plaintiff states that she became a General Manager for Defendants in or about December 2015. *Id*. at 7. In April 2016, Defendants began to pay Plaintiff $350.00 per week. *Id*. Plaintiff regularly worked over 40 hours per week, including, "off the clock" work that Defendants did not record on Plaintiff's time records. *Id*.

Plaintiff reported concerns to Defendants, including concerns that she was paid lower wages and received fewer benefits than male employees, that non-immigrant workers were mistreated, that J-1 Visa requirements were violated, that there were child labor issues, and that employees were not compensated in accordance with state and federal law. *Id*. Defendants did not respond to Plaintiff's reports and concerns. *Id*. at 8.

Plaintiff sought legal counsel after growing concerned of possible retaliation. *Id*. Plaintiff's legal counsel sent Defendants a letter on July 25, 2016, notifying them of his representation of Plaintiff and requesting Defendants direct all further communications concerning Plaintiff's employment to him. *Id*. at 8, 29. That same day, after receiving the letter, Defendants suspended Plaintiff, directed her to return all company property, and escorted her off Defendants' premises. *Id*. at 8. On July 27, 2016, Defendants sent Plaintiff a letter informing her that she was

being "terminated" from the managerial program, but could be considered for her prior position. *Id.* at 8, 35.

On July 28, 2016, Defendants sent a letter to Plaintiff and her counsel. *Id.* at 8, 38–40. Defendants maintained that Plaintiff could no longer work as a manager, but could possibly still work as a clerk. *Id.*

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (2009) (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of his or her factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). However, the Court need not accept mere conclusory statements or legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

In ruling on a motion to dismiss, the Court usually cannot consider matters outside of the pleadings. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). There are limited exceptions to this general rule. For instance, the Court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV. DISCUSSION

### A. Adequacy of Pleading

Defendants first argue that Plaintiff has not properly pled her wage and hour claims, relying on cases from district courts outside the Sixth Circuit to contend

that wage and overtime claims have strict pleading requirements. The Court did not find binding precedent in which the Sixth Circuit adopted this approach. *See Pope v. Walgreen Co.*, No. 3:14-CV-439, 2015 WL 471006, at *2–3 (E.D. Tenn. Feb. 4, 2015) (noting that the "level of detail necessary to plead a FLSA overtime claim . . . has divided courts around the country" and "district courts within the Sixth Circuit have applied a less strict approach.").

The Supreme Court has recognized that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' " but instead "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Although the complaint is far from detailed, the Court finds it sufficiently provides factual allegations and is not merely parroting the relevant statutes. For instance, Plaintiff provides the dates of her employment, the positions in which she worked, and the rate at which she was compensated for each position. She alleges that the relevant statutes apply to the Defendants and that she was employed by Defendants during the relevant time periods. Plaintiff alleges that in one position, she was not paid for her work exceeding forty hours per week, and that in another position, her fixed salary was less than the required minimum. In sum, Plaintiff's allegations provides Defendants with sufficient notice of the allegations to form a response.

Thus, because Plaintiff's allegations serve as a short and plain statement from which the Court can draw a reasonable inference that the Defendants are liable for the misconduct alleged, her claims will not be dismissed on this basis.

**B.    Fair Labor Standards Act Claims**

Plaintiff has brought three claims under the FLSA: Count I, a collective action claim alleging failure to pay overtime pay, in violation of 29 U.S.C. § 207; Count II, a collective action claim alleging failure to pay minimum wage, in violation of 29 U.S.C. § 206; and Count III, an individual claim alleging unlawful retaliation, in violation of 29 U.S.C. § 215. Dkt. No. 1, pp. 14–17 (Pg. ID 14–17).

The FLSA "has been construed liberally to apply to the furthest reaches consistent with congressional discretion." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Congress specified the limited exemptions to the FLSA. 29 U.S.C. § 213. The Supreme Court has stated that these exceptions are to "be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress." *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." *Id*.

In the Sixth Circuit, "an employer who claims to be exempt from the requirements of the Fair Labor Standards Act has the burden of proving it qualifies

under the terms of a specific exemption." *Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396 (6th Cir. 2004) (citing *Homemakers Home & Health Care Servs., Inc. v. Carden*, 538 F.2d 98, 101 (6th Cir. 1976)).

Defendants argue they qualify under the "amusement or recreational establishment" exception, 29 U.S.C. § 213(a)(3). That exemption covers

> any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 ⅓ per centum of its average receipts for the other six months of such year, except that the exemption from sections 206 and 207 of this title provided by this paragraph does not apply with respect to any employee of a private entity engaged in providing services or facilities (other than, in the case of the exemption from section 206 of this title, a private entity engaged in providing services and facilities directly related to skiing) in a national park or a national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of Agriculture;

*Id*. In reviewing this type of exemption, the Sixth Circuit reviewed the legislative history, noting that, "[t]hese establishments are typically those operated by concessionaires at amusement parks and beaches for 6 months or less than a year." *Chao*, 375 F.3d at 397.

In holding that a western-themed resort hotel, including campsites and outdoor recreational activities, did not qualify under the "amusement or recreational facility" exemption, the *Chao* panel found that the majority of Double

JJ's earnings came from lodging and food sales, and that its principal activity was not selling recreational activities. 375 F.3d at 397–98. Therefore, the panel held that this was not the type of establishment Congress had intended to exempt. *Id*. *See also Mann v. Falk*, 523 F. App'x 549, 553 (11th Cir. 2013) (affirming that an RV park, where most guests came for recreation, did not transform the business into a recreational entity and thus did not qualify for exemption).

The *Chao* panel had the luxury of factual evidence to comb through in determining if the business was exempt because the case had been appealed after summary judgment. In a motion to dismiss, the Court must accept Plaintiff's allegations as true, and those allegations do not support finding that Defendants' principal activity was the sale of recreational activities. Plaintiff's complaint states that Defendants' operated campgrounds and lodging facilities, and does not provide any information that would suggest Defendants' principal activity is akin to establishments like "concessionaires at amusement parks and beaches." *Chao*, 375 F.3d at 397. Indeed, lodging facilities may include rental rooms and meal sales—each "a necessity of life," which has already been recognized in this circuit not to be exempt as a "recreational activity." *See id*.

Accordingly, the Court does not find at this early stage[1] in the proceedings

---

[1] Defendants are welcome to present this argument again, after discovery, in a motion for summary judgment. Should undisputed facts demonstrate that

that Defendants' have adequately proven that they qualify as exempt under section 1303(a)(3).[2] The Court denies Defendants' Motion to Dismiss as to Plaintiff's FLSA claims.

C.    **Workforce Opportunity Wage Act Claims**

Plaintiff has brought two claims under the Workforce Opportunity Wage Act: Count IV, a class action claim alleging failure to pay overtime pay, in violation of MICH. COMP. LAWS § 408.414A; and Count V, an individual claim alleging failure to pay minimum wages, in violation of MICH. COMP. LAWS § 408.414. Dkt. No. 1, pp. 17–20 (Pg. ID 17–20). Defendants argue in their motion that Plaintiff's Workforce Opportunity Wage Act claims must be dismissed because the Act exempts employers covered by the FLSA. Dkt. No. 9, p. 24 (Pg.

---

Defendants only offer short-term campsites, without lodging facilities like rental rooms or long-term RV lot rentals, a stronger argument may be made for exemption. *See Mann v. Falk*, No. 2:11-CV-14432-KMM, 2012 WL 4896726, at *5 (S.D. Fla. Oct. 15, 2012), *aff'd in part*, 523 F. App'x 549 (11th Cir. 2013) (citing Dept. of Labor, Field Operations Handbook § 25j15(b)).

[2] Defendants also attached extrinsic evidence to their motion, in an effort to demonstrate they operate fewer than seven months per year. *See* Dkt. No. 9-1, p. 2–8 (Pg. ID No. 135–41). The first exhibit shows that Defendants altered the dates on their website to reflect a shortened operation period after Plaintiff filed her complaint. The second exhibit is a spreadsheet of income from an unspecified location. These documents were not incorporated into Plaintiff's complaint and they are not of the nature that would permit the Court to take judicial notice of them. Because the Court is analyzing this case on a motion to dismiss, rather than one of summary judgment, the Court does not find that these exhibits may be properly considered.

ID 120).

Both the federal FLSA, 29 U.S.C. § 201 *et seq.*, and the Michigan Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.411 *et seq.*, govern the requirements for overtime compensation in the State of Michigan. These two statutes largely parallel each other. *See Arrington v. Michigan Bell Tel. Co.*, 746 F. Supp. 2d 854, 857–58 (E.D. Mich. 2010) (comparing the FLSA and Michigan's Minimum Wage Law, which the Workforce Opportunity Wage Act replaced). The Workforce Opportunity Wage Act exempts from compliance employers subject to the FLSA's minimum wage provisions, "unless those federal minimum wage provisions would result in a lower minimum hourly wage than provided in this act." MICH. COMP. LAWS § 408.420(1). However, if an employer is only subject to both the Workforce Opportunity Wage Act because the state minimum wage exceeds the federal minimum wage, then "Section 4a does not apply." MICH. COMP. LAWS § 408.420(1)(a). Section 4a, MICH. COMP. LAWS § 408.414a, governs overtime compensation and requires a time-and-a-half premium.

Accordingly, employers subject to the Workforce Opportunity Wage Act solely because Michigan's minimum wage exceeds the federal minimum wage are exempt from the Act's overtime provisions, except for certain childcare and domestic service employees. MICH. COMP. LAWS § 408.420. Thus, under the plain language of the statute, Charter is exempt from the overtime provisions of the

Michigan Act, and Count VII must be dismissed as a matter of law. *See Davenport v. Charter Commc'ns, LLC*, 35 F. Supp. 3d 1040, 1053 (E.D. Mo. 2014) (dismissing a § 408.414a overtime claim based on the language of § 408.420(1)(a)). Plaintiff's Count IV, alleging failure to pay overtime pay in violation of the Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.414a, must be dismissed. The Court will grant Defendants' motion as to Count IV.

Nevertheless, it does not appear that the minimum pay provision of Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.414, has been exempted in the same manner as the overtime pay provision, MICH. COMP. LAWS § 408.414a. The statute only states that the overtime pay provision, Section 4a, does not apply when an employer is subject to the Workforce Opportunity Wage Act only because the state's minimum wage exceeds the federal minimum wage. MICH. COMP. LAWS § 408.420(1)(a). Based on the statutes' language, it appears that Defendants are subject to both the FLSA and the Workforce Opportunity Wage Act for failures to pay minimum wages. Thus, the Court will deny Defendants' motion as to Plaintiff's Count V, alleging failure to pay minimum wages in violation of the Workforce Opportunity Wage Act, MICH. COMP. LAWS § 408.414.

### D. Plaintiff's Collective and Class Action Claims

Defendants next argue that Plaintiff has failed to prove she is similarly situated to permit a collective action.[3] Dkt. No. 9, p. 31 (Pg. ID No. 127). Plaintiff's Counts I and II allege collective action claims under the FLSA: the first for failure to pay overtime and the second for failure to pay minimum wages. Dkt. No. 1, pp. 14–16 (Pg. ID 14–16). Plaintiff's remaining class action claim, Count V, alleges class action claims under the Workforce Opportunity Wage Act for failure to pay minimum wages. Dkt. No. 1, pp. 19–20 (Pg. ID 19–20). The Court will review her collective action claims first, followed by her class action claim.

#### a. FLSA Collective Action Claims

Section 216(b) of the FLSA provides that employees may recover unpaid overtime compensation or unpaid minimum wages by collectively suing an employer under certain circumstances. 29 U.S.C. § 216(b). Section 216(b) states:

> Any employer who violates [the maximum hours and minimum wage provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . . An action to recover [such liability] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

---

[3] Although the heading of this argument refers only to collective action claims, it appears from the content of the argument that Defendants seek to challenge both Plaintiff's collective action and class action claims. Dkt. No. 9, pp. 31–34 (Pg. ID No. 127–30).

*Id*. In a FLSA collective action, employees sue on their own behalf and for other "similarly situated" persons who may opt into the suit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). This is distinguishable from the out-out approach utilized in class actions under Federal Rule of Civil Procedure 23. *Id*.

The class-based litigation format authorized by § 216(b) "serves an important remedial purpose" by allowing "a plaintiff who has suffered only small monetary harm [to] join a larger pool of similarly situated plaintiffs" in order to reduce individual litigation costs and employ judicial resources efficiently. *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829, 842–43 (E.D. Mich. 2016) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 586 (6th Cir. 2009)). A court typically considers a plaintiff's collective action allegations at the time the plaintiff moves to conditionally certify the collective or notify potential collective members. *See id*. (noting two-step procedure involving conditional certification of collective pre-discovery and potential decertification post-discovery). *See, e.g., Bonilla v. Red Bean Sys., Inc.*, 61 F. Supp. 3d 145, 148–49 (D.D.C. 2014) (denying a motion to dismiss based on arguments that the collective action was improperly alleged).

At the notice stage, to which this case has not yet proceeded, "the plaintiff must show only that [her] position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47. That decision to authorize notice "need only be based on a modest factual showing" because the

"determination is made using a fairly lenient standard," and the analysis "typically results in conditional certification of a representative class." *Id*. at 547 (internal citations omitted).

Here, on a motion to dismiss, when the Court must consider only whether the allegation is plausible, accepting the facts in Plaintiff's complaint as true, the burden on Plaintiff is even lower. Plaintiff has met this low burden by identifying the proposed collective action members as consisting of (1) all current and former employees, (2) who worked for Defendants, (3) in the past three years, and (4) were not paid overtime wages or minimum wages as a result of the Defendants' policy. *See* Dkt. No. 1, pp. 10–11 (Pg. ID 10–11). This is adequate at the motion to dismiss stage to identify who the similarly situated employees may be and why they are similarly situated.

The Court is not ruling today on conditional certification since there is no motion before it for such a ruling. Defendants are free to dispute any motion for conditional certification of the proposed collective action members at the appropriate time, but for the purposes of a motion to dismiss, Plaintiff has met her burden. The Court will not dismiss Plaintiff's FLSA collective action claims on this basis.

### b. Workforce Opportunity Wage Act Class Action Claim

Class actions must meet the following requirements prior to certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These requirements are known as numerosity, commonality, typicality, and adequacy of representation, respectively. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Defendants attack Plaintiff's role as class representative, arguing that she does not share common interests with unnamed class members because she served in a management role from December 2015 to July 2016. Dkt. No. 9, p. 32 (Pg. ID 128).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation omitted). The class's claims must depend on a common contention that is of such a nature that it is capable of a classwide resolution. *Id.* at 350 ("for example, the assertion of discriminatory bias on the part of the same supervisor"). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).

A court may dismiss a class action claim prior to discovery where factual

development would not alter a defective class claim, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); however, that is not the case here. As filed, Plaintiff's class includes (1) all current and former employees (2) who worked for Defendants (3) at any time during the last three years (4) in the state of Michigan and (5) were paid less than minimum wage. Dkt. No. 1, p. 11 (Pg. ID 11). Although this claim may need to be more narrowly tailored prior to class certification, it is readily apparent from Plaintiff's complaint that she shares a common interest with her fellow Michigan employees as a result of Defendants allegedly paying less than the required minimum wages. That her title may differ from her fellow employees does not change that they were all subject to the same purportedly unlawful wage policy.

The Court finds that further proceedings may aid Plaintiff in pursuing a more specifically tailored class membership, the validity of which will be determined on a motion for class certification. The Court will not dismiss Plaintiff's Workforce Opportunity Wage Act claim at this early stage in the proceedings.

### E.  Whistleblower Protection Act and the Elliott-Larsen Civil Rights Act Claims

In Count VI, Plaintiff alleges unlawful retaliation in violation of Michigan Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.31. Dkt. No. 1, pp. 20–

21 (Pg. ID 20–21). In Count VII, Plaintiff alleges unlawful retaliation in violation of the Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101. *Id.* at 21–22 (Pg. ID 21–22).

Defendants' motion to dismiss does not address how Plaintiff failed to state a claim under either the Whistleblowers' Protection Act or the Elliott-Larsen Civil Rights Act. The only portion of the brief that the Court found addressing those claims was in the Statement of Issues Presented, where Defendants stated that they believed that Plaintiff's complaint should be dismissed because all claims fail as a matter of law. Dkt. No. 9, p. 8 (Pg. ID 104). Since this is a legal conclusion without any authority or argument in support, the Court will not spend any additional time examining this issue.

The Court will deny Defendants' motion as to Plaintiff's Count VI under the Michigan Whistleblowers' Protection Act and Count VII under the Elliott-Larsen Civil Rights Act.

F.  **Public Policy Claim**

Finally, in Count VIII, Plaintiff alleges that Defendants engaged in retaliatory discharge in violation of public policy. Dkt. No. 1, pp. 22–23 (Pg. ID 22–23). Defendants argue that this claim must be dismissed because it is preempted by law. Dkt. No. 9, p. 25 (Pg. ID 121). Plaintiff responds that she

intends to plead the public-policy claim in the alternative to her Whistleblower Protection Act claim. Dkt. No. 17, p. 33 (Pg. ID 270).

Where there is an applicable statutory prohibition against discharge in retaliation for conduct, a public policy claim is not sustainable. *Hilden v. Hurley Med. Ctr.*, 831 F. Supp. 2d 1024, 1045–46 (E.D. Mich. 2011), *aff'd*, 504 F. App'x 408 (6th Cir. 2012) (citing *Dudewicz v. Norris–Schmid, Inc.*, 443 Mich. 68, 80, (1993), *overruled on other grounds by Brown v. Mayor of Detroit*, 478 Mich. 589, 734 N.W.2d 514 (2007)). The Whistleblower Protection Act is the exclusive remedy for situations where an employer discharges an employee in retaliation for reporting or planning to report suspected legal or regulatory violations to a public body. *Id.* at 1046. Conversely, where an "employee does not complain to a public body and instead refuses a private employer's direction to violate the law," the Whistleblower Protection Act is inapplicable and a public policy claim may proceed. *Id.*

Here, the factual record has yet to be developed on whether Plaintiff had reported or was planning on reporting the alleged violations to a public body. Defendants have, however, provided precedent that holds a Whistleblower Protection Act claim and a retaliation in violation of Michigan public policy claim should not be allowed to continue simultaneously past summary judgment. *See Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798 (E.D. Mich. 2014).

Nevertheless, since the Court is considering this issue on a motion to dismiss, it appears that the case of *Yurk v. Application Software Tech. Corp.*, No. 2:15-CV-13962, 2017 WL 661014 (E.D. Mich. Feb. 17, 2017) is most on point. In *Yurk*, Judge Michelson held that a public-policy claim was subject to dismissal on the pleadings in view of a well-pled Whistleblower Protection Act claim, so long as the public-policy claim could be reinstated should the Whistleblower Protection Act claim prove inapplicable. *Id.* at *1–3.

The Court will follow *Yurk*'s reasoning and dismiss Plaintiff's public policy claim, subject to reinstatement should her Whistleblower Protection Act claim be found to be inapplicable. The Court will grant Defendants' motion and dismiss Count VIII without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [9] is **GRANTED** as to Counts IV and VIII, and **DENIED** as to Counts I–III and V–VII.

**IT IS SO ORDERED.**

Dated: May 12, 2017

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge